UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERTO SANTOS and )<br>MAYRA QUIRINDONGO )<br>)<br>   Plaintiffs )<br>V. )<br>)<br>A BETTER WAY WHOLESALE AUTOS, INC., )<br>UNITED AUTO CREDIT CORPORATION, )<br>UNITED CONSUMER FINANCE, INC, )<br>I.A.C., INC d/b/a INDUSTRIAL ACCEPTANCE )<br> CORPORATION, WELLS FARGO BANK, N.A. )<br> d/b/a WELLS FARGO DEALER SERVICES, )<br>and GENERAL MOTORS FINANCIAL )<br>COMPANY, INC. d/b/a AMERICREDIT )<br>)<br>   Defendants ) | CASE NO:<br><br><br><br>TRIAL BY JURY DEMANDED<br><br><br><br><br><br><br><br><br>COMPLAINT<br><br>FEBRUARY 23, 2012 |

    1. This is an action brought by plaintiffs Alberto Santos and Mayra Quirindongo to recover actual, statutory and punitive damages, reasonable attorneys' fees, and costs from defendant A Better Way Wholesale Autos, Inc. ("A Better Way"), for engaging in a "yo-yo" sale of a car, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of first representing to the plaintiffs that they had been approved for financing on the purchase of a car, then offering financing with the defendant acting as the creditor with no condition subsequent or precedent regarding the defendant being able to assign the financing agreement to a third party, then, preparing for plaintiffs' signature a retail installment contract to purchase the car without providing plaintiffs with the proper disclosures pursuant to that contract at the time plaintiffs became committed to the transaction; then, upon plaintiffs' acceptance of

this offer, delivering possession of the car to the plaintiffs, and thereafter illegally repossessing the plaintiffs' vehicle when the third party refused to purchase the Retail Installment Contract from A Better Way.  A Better Way also failed to give plaintiffs an adverse action letter when it revoked the credit which it had previously given.   A Better Way's actions violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§1691 *et seq.;* the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*; Connecticut's Uniform Commercial Code, Article 9 ("UCC Article 9"), Conn. Gen. Stat. §§ 42a-9-609 *et seq.*; Connecticut's Retail Installment Sales Financing Act ("RISFA"), Conn. Gen. Stat. §§ 36a-785(b) and 36a-785(c); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and constituted negligent misrepresentation, fraudulent misrepresentation, civil theft, conversion, and breach of contract.

2. Plaintiff, Alberto Santos, is a natural person residing in Waterbury, Connecticut.

3. Plaintiff, Mayra Quirindongo, is a natural person residing in Waterbury, Connecticut.

4. Defendant, A Better Way, is a Connecticut corporation with a principal place of business in Naugatuck, Connecticut.

5. Defendant, United Auto Credit Corporation ("UACC"), is a California Corporation and is also a "user" of consumer reports as contemplated by the FCRA.

6. Defendant, United Consumer Finance, Inc. ("UCF"), is a Massachusetts Corporation and is also a "user" of consumer reports as contemplated by the FCRA.

7. Defendant, Industrial Acceptance Corporation ("IAC"), is a Connecticut Corporation and is also a "user" of consumer reports as contemplated by the FCRA.

8. Defendant, Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services ("Wells Fargo"), is a national bank headquartered in Sioux Falls, South Dakota and is also a "user" of consumer reports as contemplated by the FCRA.

9. Defendant, General Motors Financial Company, Inc. d/b/a Americredit ("Americredit"), is a Texas Corporation and is also a "user" of consumer reports as contemplated by the FCRA.

10. Jurisdiction of this court arises under 15 U.S.C. § 1691e(f), 15 U.S.C. § 1640(e), 28 U.S.C. §1337, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. §1367.

11. This Court has jurisdiction over the defendants because they are either located in Connecticut or regularly transact business in this state.

12. Venue in this court is proper, because the plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

13. On or around April 8, 2011, plaintiff Alberto Santos visited A Better Way and expressed interest in purchasing a 2006 Lincoln Mark LT ("the Vehicle").

14. Later that day, plaintiffs returned to A Better Way to purchase the Vehicle.

15. Although the transaction was conducted primarily in Spanish, there was no Spanish-Language Buyer's guide on the Vehicle as required by 16 C.F.R. § 455.5 and plaintiffs were not provided with a Spanish-Language Buyer's guide.

16. Plaintiffs filled out a credit application, and were told by a female finance manager ("the Finance Manager") that they had been approved for financing by Chase Bank.

17. On or around April 8, 2011, the defendant, through its employees, had a Retail Purchase Order and a Retail Installment Contract for the Vehicle prepared for Plaintiffs' review and acceptance. The Retail Installment Contract described the terms of the sale and financing as had been agreed to by the plaintiffs. The purchase price was $28,409.60, the annual interest rate was 10.75%, the cash down payment was $9,500, and the Retail Installment Contract called for 60 payments of $315.16. These terms were acceptable to the plaintiffs, who accepted A Better Way's offer by signing the retail purchase order and signing the Retail Installment Contract.

18. The Retail Installment Contract described the plaintiffs as the Buyers and described A Better Way as the Creditor – Seller.

19. After plaintiffs' acceptance of the Retail Installment Contract, A Better Way became the creditor who extended credit to the plaintiffs for the purchase of the Vehicle.

20. Under the express terms of the Retail Installment Contract, the plaintiffs provided the full consideration required under the Retail Installment Contract for the purchase of the Vehicle when they signed the Retail Installment Contract, paid the $9,500 down payment, and agreed to make the monthly payments to A Better Way as recited in the Retail Installment Contract.

21. Notwithstanding the terms of the contract, A Better Way did not intend to extend credit to the plaintiffs and did not intend to be bound by the contract in accordance with its terms unless and until it was able to assign the contract to a third

party. Since the benefit of the contract would not inure to plaintiffs until the time of such contract, A Better Way failed to mark the disclosure of the annual percentage rate as an estimate, in violation of TILA.

22. Based on the aforementioned representations of the Finance Manager, plaintiffs believed that their credit application had been approved by Chase Bank, at the time they accepted possession of the Vehicle.

23. The Finance Manager also told plaintiffs that they would receive notification from Chase in about 15 days as to where to send their monthly installment payments.

24. Plaintiffs accepted delivery of the vehicle on April 8, 2011.

25. A few days later, plaintiff Alberto Santos realized that the reverse sensor on the Vehicle was not functioning properly. Plaintiff advised A Better Way of this problem, and the representative with whom plaintiff spoke told him that A Better Way would have to order the part, and that, once the part arrived, the Vehicle would be scheduled for an appointment.

26. In the days following the aforementioned conversation, plaintiffs placed multiple phone calls to A Better Way to inquire as to whether the part had arrived, and whether they could schedule an appointment for the Vehicle to be repaired.

27. Each time, A Better Way told plaintiffs that the part had not arrived. Eventually, plaintiffs spoke with the service manager, who told them to bring the vehicle to Dowling Ford in Cheshire, Connecticut.

28. Following the instruction of A Better Way's service manager, plaintiffs brought the Vehicle to Dowling Ford. The Vehicle remained at Dowling Ford for 3 or 4 days.

29. Eventually, a representative of Dowling Ford contacted plaintiffs' son, Joshua, who speaks English, and instructed him to bring the Vehicle back to A Better Way. Plaintiffs paid $300 to Dowling Ford for their diagnosis of the Vehicle.

30. Plaintiffs left the vehicle with A Better Way a second time. Eventually, the reverse sensor was repaired.

31. Two weeks later, the Vehicle's fuel pump failed. Plaintiffs paid $120 to have the vehicle towed to A Better Way in order to be repaired.

32. About three weeks after plaintiffs' purchase of the Vehicle, on or around late April, 2011, plaintiffs had not received the promised payment booklet and information.

33. At this time, plaintiff Mayra Quirindongo contacted A Better Way and spoke with the Finance Manager and inquired as to when she would receive the payment information, to which the Finance Manager responded that plaintiffs would have to wait for the bank to send it.

34. Also at this time, plaintiff told the Finance Manager that she had the money to make the first payment on the vehicle. The Finance Manager told plaintiff not to worry, that the bank would send her the information and that, when plaintiffs received the information, then they would be able to make the first payment.

35. Plaintiffs waited for the promised payment information for another month and, on or around late May 2011, plaintiff Mayra Quirindongo contacted A Better Way

again and requested to speak with the Finance Manager. Plaintiff was told that the Finance Manager was busy, so she left a message requesting that the Finance Manager return her call.

36. After two or three days, plaintiff's call had still not been returned, so she called and left a second message for the Finance Manager.

37. When the Finance Manager returned plaintiff's call, she requested a copy of plaintiffs' pay stubs and income tax returns.

38. Having already provided this information to A Better Way, plaintiff inquired as to the reason why the Finance Manager was requesting it. To this, the Finance Manager responded that Chase was asking for it. Accordingly, plaintiff sent the information to A Better Way.

39. Also during the aforementioned conversation, plaintiff inquired as to the reason why she had not received her payment booklet. To this, the Finance Manager evasively responded that she would have to review the paperwork.

40. Presumably as a result A Better Way's difficulty in assigning the Contract to a financial entity as it had originally planned, A Better Way solicited other credit entities to make inquiries into plaintiffs' credit reports without plaintiffs' permission and despite the fact that, at the time those inquires were made, plaintiffs were not seeking an additional extension of credit and had no desire to obtain credit.

41. UACC made an unauthorized inquiry into plaintiff Mayra Quirindongo's Experian report on or around May 25, 2011.

42. UCF made an unauthorized inquiry into plaintiff Mayra Quirindongo's Experian report on or around May 25, 2011.

43. IAC made an unauthorized inquiry into plaintiff Mayra Quirindongo's Experian report on or around May 19, 2011.

44. Wells Fargo made an unauthorized inquiry into plaintiff Mayra Quirindongo's TransUnion report on or around May 9, 2011.

45. Americredit made an unauthorized inquiry into plaintiff Mayra Quirindongo's TransUnion report on or around May 9. 2011.

46. UCF made an unauthorized inquiry into plaintiff Alberto Santos's Experian report on or around May 25, 2011.

47. UACC made an unauthorized inquiry into plaintiff Alberto Santos's Experian report on or around May 25, 2011.

48. IAC made an unauthorized inquiry into plaintiff Alberto Santos's Experian report on or around May 19, 2011.

49. Americredit made an unauthorized inquiry into plaintiff Alberto Santos's TransUnion report on or around May 9, 2011.

50. Wells Fargo made an unauthorized inquiry into plaintiff Alberto Santo's TransUnion report on or around May 9, 2011.

51. On or around July 2011, plaintiff Mayra Quirindongo was contacted by the Finance Manager, who told plaintiff that she needed to come back to A Better Way with the Vehicle.

52. Plaintiff returned with her son, Joshua, and her daughter-in-law, Juana, and spoke with the Finance Manager. At this time, the Finance Manager told plaintiff that the bank did not approve the loan due to insufficient income.

53. The Finance Manger told plaintiff that she could pick out a car that was less expensive, to which plaintiff responded that she did not want another car, and that she wanted to keep the Vehicle. Plaintiff also told the finance manager that she had the money and that she could afford to make the monthly payments on the Vehicle, and offered to make the monthly payments to A Better Way. The Finance Manger refused to accept payments from plaintiffs, and told plaintiff that it would cost another $6,000 dollars to have the A Better Way finance the vehicle.

54. Plaintiff then requested that A Better Way return the money that she had paid for the vehicle. A Better Way provided plaintiff with a check that day, but the check was for $8,764.40; $736.60 less than the amount of plaintiff's cash down payment.

55. Plaintiff inquired as to the reason why the check was not for the full amount of plaintiffs' down payment. The Finance Manger told plaintiff that A Better Way had to deduct money for the amount of the monthly payments as well as the mileage accrued on the Vehicle.

56. At several points during the conversation, plaintiff expressed her desire to keep the Vehicle, to which the Finance Manager responded that plaintiff would not be allowed to take the Vehicle with her when she left the dealership.

57. Plaintiff Alberto Santos then contacted A Better Way and spoke with Michael Bowe ("Mr. Bowe"), the owner of the dealership. Plaintiff requested that A Better Way return the remaining money that it had deducted from plaintiffs' payment.

58. Mr. Bowe refused to return the money, asserting that plaintiffs had used the Vehicle for three months and had put mileage on it. Mr. Bowe told plaintiff that the situation was like a rental vehicle.

9

59.     A Better Way did not send notice that it had withdrawn the credit that it had previously extended, or, alternatively, that it had denied plaintiffs' credit application within thirty days of plaintiffs' submission of their completed credit application, as required by ECOA.

60.     A Better Way's acts, as described above, violated the ECOA, TILA, CUTPA, UCC Article 9, RISFA, FCRA, and constituted negligent misrepresentation, fraudulent misrepresentation, civil theft, conversion, and breach of contract.

61.     As a proximate result of A Better Way's conduct, plaintiffs suffered financial loss, embarrassment, humiliation, mental distress and inconvenience.

62.     The acts complained of herein were done by A Better Way intentionally, purposefully and/or in reckless disregard of the rights of the plaintiffs.

63.     UACC, UCF, IAC, Wells Fargo and Americredit violated FCRA § 1681b(f) in that they inquired into plaintiff's consumer reports without proper authorization.

**Wherefore, with respect to A Better Way, Plaintiffs claim**, actual money damages pursuant to 15 U.S.C. §1691e(a), punitive damages of $10,000 pursuant to 15 U.S.C. §1691e(b), and attorney's fees and costs of this action pursuant to 15 U.S.C. §1691e(d); actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $1,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); pursuant to C.G.S. §42a-9-625, actual damages, punitive damages and a reasonable attorney's fee pursuant to 15 U.S.C. 1681n, A Better Way is liable to the plaintiffs for an amount equal to the credit service charge plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Contract, money damages, and a reasonable attorney's fees pursuant to C.G.S. § 42-150bb; actual damages and in no event less than one fourth of the sum of all payments which have been made under the Retail Installment Contract, as provided in C.G.S. § 36a-785(i); statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); treble damages pursuant to C.G.S. § 52-564; an order from the Court ordering A Better Way to cease and desist from engaging in unfair and deceptive trade practices; such other further relief to which plaintiffs are, at law, or in equity and by statute entitled to against A Better Way.

**Wherefore, with respect to UACC**, plaintiffs seek recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681*o*; and such other relief as this Court deems appropriate.

**Wherefore, with respect to UCF**, plaintiffs seek recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681*o*; and such other relief as this Court deems appropriate.

**Wherefore, with respect to IAC**, plaintiffs seek recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681*o*; and such other relief as this Court deems appropriate.

**Wherefore, with respect to Wells Fargo**, plaintiffs seek recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681*o*; and such other relief as this Court deems appropriate.

**Wherefore, with respect to Americredit**, plaintiffs seek recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681*o*; and such other relief as this Court deems appropriate.

**PLAINTIFFS DEMAND TRIAL BY JURY**

                        **PLAINTIFFS ALBERTO SANTOS AND MAYRA QUIRINDONGO**

By: /s/ Daniel S. Blinn
    Daniel S. Blinn, ct02188
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457
    dblinn@consumerlawgroup.com